```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
SEAN CLAUSON,

                Plaintiff,
                                        03 Civ. 8168 (JES)
        - against -
                                        MEMORANDUM OPINION
RYAN ESLINGER,                          AND ORDER

                Defendant.
------------------------------X
```

**SPRIZZO, D.J.:**

Plaintiff, Sean Clauson ("plaintiff"), brings the above-captioned action against defendant, Ryan Eslinger ("defendant"), seeking injunctive relief and damages, pursuant to both the Lanham Act, 15 U.S.C. § 1125(a), and New York state law. Plaintiff seeks a preliminary injunction requiring defendant to credit plaintiff as producer of the film "Madness and Genius" ("the film") and to take various steps to change the perception that defendant was producer. The Court conducted evidentiary hearings on January 14 and February 11, 2004 to develop a more complete factual record and evaluate the parties' credibility, and it heard oral argument on April 7, 2004. For the reasons set forth below, the Court denies plaintiff's application. In addition, defendant brings a motion to dismiss plaintiff's Complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court denies defendant's motion.[1]

## BACKGROUND

The following facts, except where so indicated, are taken from

---

[1] Plaintiff originally argued that defendant violated both sections 43(a)(1)(A) and 43(a)(1)(B) of the Lanham Act. At oral argument, however, plaintiff agreed that the Supreme Court's decision in <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23 (2003), precludes any claim under section 43(a)(1)(A) in this case. <u>See</u> Hr'g Tr., Apr. 7, 2004 ("Apr. Tr.") at 9-10.

the evidentiary hearings conducted by this Court on January 14 and February 11, 2004.[2]

"Madness and Genius," written by defendant when he was thirteen years old, centers on four characters who are academically brilliant but lead emotionally barren lives. Pl.'s Ex. 10 at 2-3. Defendant began pre-production for the film in 2001, using $20,000 that he had saved over the course of several years. Declaration of Ryan Eslinger, Nov. 19, 2003 ("Eslinger Decl.") ¶ 3. Star actor Tom Noonan has a lead role in the film, and critics have given the film positive reviews. See Pl.'s Ex. 10 at 2-3, 11-14.

Plaintiff's involvement with the film grew out of a chance meeting with defendant at an NYU gym, at which defendant asked plaintiff if he wanted to help out with the film. Hr'g Tr., dated Jan. 14, 2004 ("Jan. Tr.") at 64, 117. According to plaintiff, he subsequently called defendant and told him he wanted to "produce this film," as defendant had commented that he had dismissed two producers from the project. Id. The parties never discussed how plaintiff would be credited for his work. Id. at 117.

In the pre-production and production phases of the film, plaintiff hired the majority of the crew members, procured free and reduced-price equipment rentals and food, obtained shooting locations, arranged for the crew's transportation, prepared the film's shooting schedule and budget, advertised and promoted the film, maintained a production log, and attempted to locate missing equipment. Id. at 74-76, 82, 121, 127, 136, 137.

In addition, documents prepared by plaintiff, to which defendant did not object, listed plaintiff as producer. Jan. Tr. at

---

[2] Testimony and exhibits from the evidentiary hearings will be considered only with regard to plaintiff's application for a preliminary injunction. On a motion to dismiss, the Court must accept all of the allegations set forth in the Complaint as true. Rombach v. Chang, 355 F.3d 164, 169 (2d Cir. 2004) (quoting Ganino v. Citizens Utilities Co., 228 F.3d 154, 161 (2d Cir. 2000)).

26-27, 132. A contract between the two also listed plaintiff as producer of the film, although defendant contends that he was coerced into signing it. See id. at 89, 117; Def.'s Ex. F. Plaintiff, however, forged defendant's signature on a Screen Actors Guild ("SAG") contract, thereby indicating that defendant was the film's producer. See Def.'s Ex. D. Defendant, therefore, is potentially liable to SAG as the film's producer. See id.

Plaintiff's participation in the post-production phase of the film, however, was less extensive. See Jan. Tr. at 94, 121-22. Although plaintiff contends that his limited involvement was the result of defendant's refusal to allow him to participate, the record indicates that plaintiff did not expressly state his desire to participate in post-production until April 2003, after he learned that the film had been accepted to the Toronto Film Festival and after most of the post-production work had been completed. See id. at 94, 121-24; Hr'g Tr., Apr. 7, 2004 ("Apr. Tr.") at 22, 29; Def.'s Ex. M.

Following his work on the film, plaintiff posted a resume on an industry website advertising himself as a line producer. Def.'s Ex. H. He suggested on the resume that he was qualified for a line producer position because of his experience in "budgeting, fundraising, scheduling, auditions, rehearsals, crew assembly, location procural, insurance, permits, transportation, equipment, food." See id. Plaintiff's resume also stated, however, that he is "currently producing HD feature," a reference to "Madness and Genius." See id.

The film appeared in the Toronto Film Festival. See Eslinger Decl. ¶ 28. Plaintiff received no credit as either producer or line producer in any of defendant's submissions to that festival, to other festivals, or in any other promotional materials prepared for the film. Jan. Tr. at 98-99. In addition, the Internet Movie Database (IMDb), a database used in the film industry to check

3

resume accuracy, has been contacted by both parties regarding this disagreement and currently lists plaintiff as line producer and co-producer and defendant as producer. See Jan. Tr. at 139; Letter of K. William Clauson, Mar. 27, 2006 ("Def.'s letter"); Letter of Robert Clarida, Feb. 14, 2006 ("Pl.'s letter); http://imdb.com/title/tt0378289/fullcredits. (last visited Sept. 7, 2006).

In October 2003, plaintiff submitted to this Court an Order to Show Cause for Preliminary Injunctive Relief. On November 20, 2003, defendant moved to dismiss plaintiff's complaint. This Court held evidentiary hearings on January 14 and February 11, 2004, and heard Oral Argument on plaintiff's application on April 7, 2004.[3]

## DISCUSSION

A.  Preliminary Injunction

A party seeking a preliminary injunction "must demonstrate '(1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in its favor.'" Mony Group, Inc. v. Highfields Capital Mgmt., 368 F.3d 138, 143 (2d Cir. 2004) (quoting Forest City Daly Hous., Inc. v. Town of North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999)). Where, as here, a mandatory injunction is sought, relief should only be granted "'upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'"

---

[3] At the conclusion of oral argument, the Court urged the parties to settle. Jan. Tr. at 158. The Court later discovered that IMDb was, in fact, listing plaintiff as co-producer and line producer of the film, and defendant as producer of the film. As a result, the Court scheduled a pre-trial conference, which took place on January 30, 2006. Following that pre-trial conference, the parties informed the Court that defendant did not consent to the change. Def.'s letter; Pl.'s letter. The Court therefore began reconsideration of the matter.

Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995) (quoting Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)).

Plaintiff seeks an order enjoining defendant from "showing, delivering, transferring, or contracting as to the film" until he lists plaintiff as producer in the film's credits; ordering defendant to credit plaintiff as being the sole producer in all promotional materials related to the film; ordering defendant to notify the Toronto Film Festival, Variety, IMDb, and all persons (such as reviewers, film industry executives, and film publicity agents) with whom defendant had communicated regarding the film that plaintiff, and not defendant, was the producer; and mandating that defendant take out a quarter page ad for three weeks in a row in Variety, in a form approved by plaintiff, stating that plaintiff was the producer of the film. Pl.'s Order to Show Cause ¶¶ 1-5.

1.   Likelihood of Success on the Merits

Although plaintiff's contention that he was the film's producer is supported by the statements of several witnesses and by several documents, other parts of the record indicate that it was actually defendant who produced "Madness and Genius."

Several of the witnesses stated in a conclusory fashion that plaintiff was producer, but none managed to describe the roles of producer and line producer with any objective lines of demarcation between the two roles. See Jan. Tr. at 3-4, 47. In fact, all agreed that on small budget films such as "Madness and Genius" the responsibilities of producer and line producer are essentially identical, thereby weakening the witnesses' assertions that plaintiff was producer and not merely line producer. See id. Defendant, moreover, submitted definitions of the roles that do provide clear lines of demarcation. See Def.'s Ex.'s AA at xx, BB at 98, 100, CC at 18. Those definitions, taken from film textbooks

and filmmaking guides, indicate that, given the parties' responsibilities on the film, defendant was, in fact, producer. See Eslinger Decl. ¶¶ 3, 27; Jan. Tr. at 20, 62-63, 74-76, 121, 127, 137; Def.'s Ex. BB at 98, 100. Plaintiff's resume buttresses defendant's definition of the role of line producer, as it suggests that budgeting, fundraising, scheduling, crew assembly, location procural and other like tasks--essentially plaintiff's responsibilities on "Madness and Genius"--are the qualifications for the position of line producer. Def.'s Ex. M.

Plaintiff, furthermore, did not participate in the film's post-production phase, and the parties agree that post-production work is an essential responsibility of a producer. See Apr. Tr. at 22, 42-43. Although plaintiff argues that defendant would not allow him to participate in post-production, the record is not so clear. See Jan. Tr. at 94, 121-24; Apr. Tr. at 22. Although defendant ignored plaintiff's phone calls and emails in Fall 2003, plaintiff did not expressly offer to participate in post-production until April 2003, after the film had been accepted to the Toronto Film Festival and after most of the post-production was already complete. See id.

While defendant did not object to several pre-production documents which listed plaintiff as producer, those documents were prepared by plaintiff, not defendant. See Jan. Tr. at 73-76. Plaintiff, however, forged defendant's name on a Screen Actors Guild Agreement, naming defendant as the film's producer, and making defendant potentially liable to SAG. Jan. Tr. at 141; Def.'s Ex. D. Furthermore, that forgery undermines the credibility of plaintiff's testimony.

Plaintiff therefore has not demonstrated a likelihood of success on the merits.

2.  BALANCE OF HARDSHIPS

Assuming that there are substantial questions going to the

merits of plaintiff's claims, plaintiff still must demonstrate that the balance of hardships tips in his favor. Mony Group, Inc., 368 F.3d at 143 (quoting Forest City Daly Hous., Inc. v. Town of North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999)). Plaintiff has failed to carry that burden.

Denial of plaintiff's application would indeed hinder plaintiff's ability to leverage his role in "Madness and Genius" to obtain work as a producer on other projects. Plaintiff, however, has also posted a resume seeking employment as a line producer, credit which defendant is readily willing to give plaintiff. See Def.'s Mem. of Law at 6. The burden that the proposed preliminary injunction would impose on defendant, furthermore, would not be trivial: defendant would be mandated to pay for three quarter-page ads in the industry magazine Variety, and to contact all persons in the film industry with whom defendant had communicated regarding the film and announce that plaintiff was producer. Pl.'s Order to Show Cause ¶¶ 4-5.

Based on the foregoing, this Court finds that plaintiff has not met its burden of showing that it is entitled to a preliminary injunction, much less the "clear showing" required for the mandatory injunction sought in this case.

B.    Motion to Dismiss

On a motion to dismiss, a court must accept all of the allegations set forth in the complaint as true, and must draw all reasonable inferences in favor of the plaintiffs. Rombach v. Chang, 355 F.3d 164, 169 (2d Cir. 2004) (quoting Ganino v. Citizens Utilities Co., 228 F.3d 154, 161 (2d Cir. 2000)); Halperin v. eBanker USA.COM, Inc., 295 F.3d 352, 356 (2d Cir. 2002) (citing Kalnit v. Eichler, 264 F.3d 131, 137 (2d Cir. 2001)). Dismissal is appropriate only when it is clear from the pleadings that the plaintiffs can prove no set of facts "in support of their claims

that would entitle them to relief." <u>Halperin</u>, 295 F.3d at 356 (citing <u>Kalnit</u>, 264 F.3d at 137-38).

Plaintiff originally claimed a violation of both section 43(a)(1)(A) and section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a). Pl.'s Memo. of Law, dated Mar. 3, 2004 at 1. Section 43(a)(1)(A) prohibits representations in commerce which are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). Section 43(a)(1)(B) prohibits misrepresentations in commercial advertising or promotion of the "nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Plaintiff now concedes, however, that any section 43(a)(1)(A) claim in this case is precluded by Supreme Court's ruling in <u>Dastar</u>. <u>See</u> Apr. Tr. at 9-10.

In that case, Dastar released a video about World War II that used significant footage taken from a television series previously broadcast by Twentieth Century Fox. <u>Dastar</u>, 539 U.S. at 25-27. The Fox television series came into the public domain in 1977, so Fox sued under section 43(a)(1)(A) of the Lanham Act, claiming that Dastar's statement that it was the producer of the series constituted a false designation of origin. <u>See id.</u> at 26-27. The Court rejected Fox's claim, holding that the term "origin" in section 43(a)(1)(A) is not so broad as to include the "author of any idea, concept, or communication embodied in those goods." <u>Id.</u> at 37. Rather, the Court held, "origin" applies only to "the producer of the tangible goods that are offered for sale." <u>Id.</u>

The Court's holding in <u>Dastar</u> addressed only the applicability of section 43(a)(1)(A) to reverse passing off claims; Fox did not assert a claim under section 43(a)(1)(B). <u>See id.</u> at 36, 38. The

Court grounded its holding in what it ruled was the "natural understanding" of section 43(a)(1)(A)'s phrase "origin of goods." See id. at 32-32, 37. It concluded, in short, that although this phrase does not extend to the originator of the idea that the goods embody, it does reach beyond geographic origin to origin of production of the physical goods at issue. See id. at 32, 37. In contrast, Congress did not incorporate any such reference into section 43(a)(1)(B), the false advertising prong of the Lanham Act. 15 U.S.C. § 1125(a)(1)(B). Instead, in section 43(a)(1)(B), it mandated liability for misrepresentation of "the nature, characteristics, [or] qualities" of goods in commercial advertising or promotion. 15 U.S.C. § 1125(a)(1)(B). The Dastar Court explicitly left open the possibility that some false authorship claims could be vindicated under the auspices of this section's prohibition on false advertising. See Dastar, 539 U.S. at 38; Zyla v. Wadsworth, Div. of Thomson Corp., 360 F.3d 243, 252 n.8 (1st Cir. 2004).[4]

Here, plaintiff has pleaded that the film's credits and promotional materials wrongly credit defendant as being producer. Compl. ¶¶ 1, 27. As such, plaintiff has alleged a misrepresentation and therefore has stated a claim under section 43(a)(1)(B). See 15 U.S.C. § 1125(a)(1)(B). Based on the foregoing, this Court denies defendant's motion to dismiss.

### CONCLUSION

This Court hereby denies both plaintiff's motion for a preliminary injunction and defendant's motion to dismiss. A Pre-

---

[4] Defendant also seeks dismissal of plaintiff's contract claim. See Def.'s Mem. of Law at 13-15, dated Feb. 25, 2004. On its face, the complaint states a cause of action for breach of contract. Compl. ¶¶ 30-32. It pleads that the parties entered into a contract to make a film, that contrary to the terms of the contract, defendant publicly and falsely claimed that he is the producer of the film and has falsely failed to give plaintiff any credit for his work as producer. Id. There is no basis to grant a motion to dismiss under Rule 12(b)(6). As such, defendant's motion to dismiss plaintiff's contract claim shall be and hereby is denied.

Trial Conference shall occur on December 19, 2006 at 3 p.m. in Courtroom 21C, 500 Pearl Street.

**It is SO ORDERED.**

Dated:   New York, New York
         October 3 , 2006

_____
John E. Sprizzo
United States District Judge

**APPEARANCES**

CLAUSON & ATWOOD
Attorneys for Plaintiff Sean Clauson
10 Buck Road
Hanover, NH 03755

    KARL WILLIAM CLAUSON, ESQ.

        Of Counsel

MICHAEL SCHLANGER, ESQ.
Attorney for Plaintiff Sean Clauson
1025 Westchester Avenue
Suite 108
White Plains, NY 10604

COWAN, LIEBOWITZ & LATMAN, P.C.
Attorneys for Defendant Ryan Eslinger
1133 Avenue of the Americas
New York, NY 10036-6799

    ROBERT W. CLARIDA, ESQ.

        Of Counsel